# NO. 12-08-00050-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RODNEY WAYNE CEARLEY,* *APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Rodney Cearley appeals his conviction for murder.  In six issues, Appellant argues that the evidence is insufficient, that the trial court erred in denying his request for a jury instruction, and that the trial court should have excluded the testimony of a witness.  We affirm.

### BACKGROUND

The last time his mother saw Michael Grimes was in January 1999 when he left her home with Appellant.  Days after Grimes disappeared, Appellant told a tradesman he did business with that he had killed Grimes.  The tradesman did not report this statement.  Several months later Appellant told his mother that he had killed Grimes, that he had done so in self defense, and that he had buried Grimes in the woods and thrown away the knife he used.

In 2000, Appellant's mother told the police about Appellant's statement.  The police conducted a search for the body, but did not find it.  The case remained unsolved until Sergeant A.G. Miller of the Texas Rangers Unsolved Crime Unit was assigned the case.  He directed another search for Grimes's body or remains, but the search was unsuccessful.  Miller reinvestigated the case, and he looked into the various stories that had proliferated about what had happened to Grimes.  Miller determined to his satisfaction that the rumors were not accurate.  He concluded his investigation by

searching various public and private databases to look for evidence that contradicted Appellant's statement that he killed Grimes in January 1999.  He did not find any.

An Angelina County grand jury indicted Appellant for the murder of Michael Grimes in 2006.  He pleaded not guilty, but was found guilty by a jury after a trial held in 2007.  The jury assessed punishment at imprisonment for twenty years.  This appeal followed.

## CORPUS DELICTI

In his first three issues, Appellant argues that the evidence is insufficient to corroborate his confession.

### Applicable Law

When the state relies on a statement or confession of the accused to support a conviction, there must be independent evidence which tends to establish the corpus delicti of the offense, that is that the person was killed by the criminal act of another.  *See Fisher v. State*, 851 S.W.2d 298, 302–03 (Tex. Crim. App. 1993) (en banc).  The corpus delicti rule is a common law, judicially created rule of evidence intended to ensure that a person will not be convicted based solely on his own false confession to a crime that never occurred.  *See Salazar v. State*, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002) ("The corpus delicti rule guarded against the shocking spectacle and deleterious effect upon the criminal justice system when a murder victim suddenly reappeared, hale and hearty, after his self-confessed murderer had been tried and executed.").

The corroborative evidence must show, in the case of a murder, that the person is deceased and that the person died as a result of a criminal act.  *Id*. at 644.  That the defendant committed the murder may be established by his confession, and the corpus delicti rule is satisfied "if some evidence exists outside of the extra–judicial confession which, considered alone or in connection with the confession, shows that the crime actually occurred."  *Id*. at 644–45.  It was once the law in Texas that the body or remains of the deceased had to be produced to support a murder conviction, but that is no longer the law.  *See Fisher*, 851 S.W.2d at 303.

### Analysis

There is evidence that tends to establish that Michael Grimes met his end through a criminal act.  He was last seen in Appellant's company, leaving his mother's house to go with Appellant.  He

2

did not have health problems that were life threatening, and there was no evidence that he was likely to commit suicide or to go into hiding. The Texas Ranger who did the investigation testified that he searched public and private databases and that there was no record of Grimes's being arrested, renewing his driver's license, earning any money, filling any prescriptions, or paying any taxes since the date of his disappearance. Grimes was living with his mother at the time he left with Appellant. There was testimony that he regularly checked in with his mother when he was not living with her. Additionally, Grimes was a doting father to his son, and he spent a considerable amount of time with him. At the time of trial, Grimes had been missing for more than seven years and yet there was no record of him and he had not contacted his mother or his son. Finally, there was testimony that it was his nature to get arrested somewhat regularly, and that had not happened since he disappeared.

This evidence tends to show that Grimes is dead and that his death was the result of a criminal act. We overrule Appellant's first, second, and third issues.

## SELF-DEFENSE

In his fourth issue, Appellant argues that the evidence was insufficient for the State to carry its burden of persuasion on the issue of self-defense. Specifically, Appellant argues that there was no evidence that he did not act in self-defense.

### Applicable Law

A person may use deadly force against another if he reasonably believes that deadly force is necessary to protect himself against another's use or attempted use of unlawful force and if a reasonable person in the actor's situation would not have retreated. TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a) (Vernon Supp. 1996).[1] The defendant has the initial burden of producing evidence to support a claim of self-defense, but the state retains the burden of persuasion on the issue. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). A finding of guilt is an implied finding against the defensive theory. *Id*.

In a case where the jury has found the defendant guilty despite an assertion that he acted in self-defense, we do not look to whether the state presented evidence that refuted the appellant's self-defense evidence. Rather, we determine whether after viewing all the evidence in the light most

[1] Applicable statute for 1999 offense.

3

favorable to the prosecution, any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against the appellant on the self-defense issue beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).[2]

**<u>Analysis</u>**

Appellant argues that there is "no evidence" that he did not act in self-defense and so the State could not have met its burden of persuasion on this issue. This misperceives the nature of the burden on the State. The State's burden of persuasion requires only that the State prove its case beyond a reasonable doubt but does not require the production of evidence. *See Zuliani*, 97 S.W.3d at 594.

The evidence conflicts on the issue of self-defense. Appellant told three people that he had killed Grimes. One of the witnesses overheard Appellant talking at a party and did not hear his whole account. The other two witnesses, Appellant's mother and the tradesman, testified that he said he acted in self-defense. His account to them was slightly different in that he told his mother that his wife was not present and he told the tradesman that he acted to protect his children and his wife. Appellant did not testify. The account itself was not very detailed, and the jury could have had some questions as to the nature of the threat Appellant faced when he killed Grimes. Furthermore, Appellant's mother's version of his statement is the most complete, and it includes some facts that might undermine a self-defense claim. Specifically, Appellant told his mother that the fight started in the house. There was apparently a single knife involved, and Grimes was killed outside. There was no explanation for how the fight moved from the house to the yard or how Appellant came to have the upper hand.

These statements were the only evidence that Appellant acted in self-defense, although they were bound up in the most compelling evidence supporting the verdict, that is Appellant's admission that he killed Grimes. The jury also heard that Grimes could be a violent person and that he had been diagnosed with bipolar disorder. Furthermore, there was no compelling evidence of any motive

---

[2] This is the standard for reviewing the legal sufficiency of the evidence. Appellant does not cite a proposed standard of review. He argues that there is no evidence to support the jury's rejection of his defense. We interpret Appellant's argument to be a challenge to the legal sufficiency of the evidence.

4

Appellant would have had to kill Grimes.

There is also evidence that is more directly contrary to Appellant's self-defense claim. First, Appellant did not report to the authorities that he had been attacked by Grimes. Not only did he not report it, but the police asked him on at least three occasions whether he knew anything about Grimes's disappearance. He told them he could not talk about it. Furthermore, and even more unusual, Appellant continued to call Grimes's mother after he disappeared, asking when Grimes would return to work.

The determination of whether a defense is shown by the evidence is essentially a credibility determination to be made by the jury. *See* ***Saxton***, 804 S.W.2d at 914. The jury's task in this case was not to evaluate the credibility of a witness, but to assess whether Appellant's assertion that he acted in self-defense was credible. We disagree with Appellant's assertion that the State was required to accept Appellant's version of events in total or not at all. It is not uncommon for a defendant to confess to an offense and offer a justification, and a jury is free to accept or reject either independently.

In light of all of the evidence, we hold that a rational trier of fact could have found the essential elements of murder beyond a reasonable doubt and also could have found against Appellant on the self-defense issue beyond a reasonable doubt. Appellant's account of his use of force, gleaned through other witnesses, was fragmentary, and there was compelling evidence about how he acted after he killed Grimes to suggest that his actions were not justified. We overrule Appellant's fourth issue.

## JURY INSTRUCTION

In his fifth issue, Appellant argues that the trial court erred in not instructing the jury about the corpus delicti rule for corroboration of confessions.

Appellant has failed to offer any argument in his brief that the trial court erred. In four paragraphs, Appellant sets out the proposed instruction and states the law regarding how instructions are to be proposed and what must be done to preserve a complaint. The fifth and final paragraph[3]

---

[3] In his summary of the argument, Appellant cites ***Self v. State***, 513 S.W.2d 832, 835–37 (Tex. Crim. App. 1974). The ***Self*** decision is important in the area of corpus delicti jurisprudence, but does not assist with the question of whether the trial court erred in not giving the instruction Appellant sought.

on this issue in his brief reads as follows:

> The corpus delicti instruction was appropriate and should have been granted [sic] by the trial court. The trial court refused to give the appropriate requested instruction and thereby committed reversible error.

An appellant's brief must contain a clear and concise argument for the contentions made. *See* TEX. R. APP. P. 38.1(i). An appellant's brief should argue to the court the law and the facts that weigh in the party's favor, and rule 38.1(i) is not satisfied by brief and conclusory statements that are unsupported by authority. *See **Mack v. State***, No. 12-02-00037-CR, 2003 Tex. App. LEXIS 10787, at \*4–6 (Tex. App.–Tyler Dec. 23, 2003, pet. ref'd) (citing ***McFarland v. Sanders***, 932 S.W.2d 640, 647 (Tex. App.–Tyler 1996, no writ)); see also ***Wyatt v. State***, 23 S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000) (court declined to make arguments for an appellant where issue is inadequately briefed.).

The question of whether such an instruction should be given to the jury and the related question of how to assess a trial court's decision not to give such an instruction are not uncomplicated questions. *See*, *e.g.*, 43 George E. Dix & Robert O. Dawson, CRIMINAL PRACTICE AND PROCEDURE § 31.351 (2d ed. 2001) (questioning whether juries should be instructed on the corpus delicti corroboration rule); *see also **Daniels v. State***, No. 02-06-00258-CR, 2007 Tex. App. LEXIS 7119, at \*16 n.8 (Tex. App.–Fort Worth Aug. 31, 2007, no pet.) (mem. op., not designated for publication) (corpus delicti jury instruction given).

Appellant's conclusory statement that the proposed instruction was appropriate is not an argument. Accordingly, Appellant has waived this issue. *See* TEX. R. APP. P. 38.1(i). We overrule Appellant's fifth issue.

## SURPRISE WITNESS

In his sixth issue, Appellant argues that the trial court erred by allowing the State to call a witness during the punishment phase of the trial who had not been disclosed in pretrial discovery.

**Facts**

Following television coverage of the verdict in Appellant's trial, a witness contacted the State to report that Appellant had assaulted her in 2005 or 2006. The assistant district attorney alerted the

court and Appellant the next morning before the sentencing portion of the trial was to begin. The court heard testimony from the witness who corroborated that she contacted the State after a relative told her that she had seen on television that Appellant had been convicted in this case. The witness testified that Appellant had attempted to strangle her and that she had barely managed to escape. Appellant was permitted to cross examine her outside the presence of the jury.

The trial court determined that the State had not known about the evidence. The court ruled that the State would be permitted to present the evidence and Appellant would be given time to investigate the matter.

**Applicable Law**

Subject to certain conditions, the state is required to disclose the witnesses it intends to call, along with photographs, the defendant's written statements, letters, accounts, and other evidence material to any matter in the case. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (Vernon Supp. 2008). Evidence that is willfully withheld from disclosure under a discovery order should be excluded from evidence. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). Determining if the state acted willfully encompasses two factors: (1) whether the prosecutor acted in bad faith in failing to disclose the evidence and (2) whether the defendant could have reasonably anticipated the contested evidence. *Wood v. State*, 18 S.W.3d 642, 649–50 (Tex. Crim. App. 2000); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992).

In determining whether the state acted in bad faith, we consider whether the defendant established that the state intended to deceive him, whether the state's notice left the defendant adequate time to prepare, and whether the state had otherwise met its discovery obligations. *See Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.–Texarkana 2000, pet. ref'd). In determining whether the defense could have anticipated the state's witness, we evaluate the degree of surprise to the defendant and the degree of disadvantage inherent in that surprise. *Id*. at 88–89. We also overlook the degree to which the trial court was able to remedy that surprise. *Id.*

We review the trial court's determination of whether to allow evidence that was not disclosed prior to trial for an abuse of discretion. *Wood*, 18 S.W.3d at 649.

**Analysis**

The State did not act in bad faith. The witness was not known to the State prior to trial, the

State was not on constructive notice of the incident because it had not been reported to law enforcement, and the prosecutor disclosed the witness the morning following the evening she learned of the witness. On the other hand, Appellant did not expect the witness to testify.

The trial court may have been within its discretion to simply allow the evidence. However, the trial court went further and assiduously sought to alleviate any harm to Appellant. The disclosure came on a Friday, and the witness testified that day. Appellant's counsel was able to cross examine the witness effectively and had a command of the details surrounding the incident. Appellant's counsel indicated that he was going to rest and close that Friday. The trial court invited Appellant to seek a continuance. Appellant's counsel declined, but later he asked that the trial be continued over the weekend to allow him to find a witness to the alleged assault. The trial court granted his request.

Over the weekend the trial court issued a bench warrant for Appellant's witness, who was in jail. That witness testified on Monday and rebutted the other witness's account of the assault. Appellant did not seek a further delay of the trial to prepare or to gather evidence relating to this issue.

We hold that the trial court did not abuse its discretion. This was evidence that became available after the verdict. The trial court carefully balanced the prerogative of one party to present evidence that has not been withheld with that of the other to have a reasonable approximation of what evidence will be presented at trial. Appellant had the time he needed to prepare, and the trial court's decision to allow the evidence was reasonable. We overrule Appellant's sixth issue.

#### DISPOSITION

Having overruled Appellant's six issues, we ***affirm*** the judgment of the trial court.

    **SAM GRIFFITH**
Justice

Opinion delivered June 30, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)